GROGAN v. THE BROADWAY FOUNDRY COMPANY *et al.*, *Appellants.*

1. **Death of Person from Negligence:** ASSESSMENT OF DAMAGES. On the trial of an action for the death of plaintiff's son, by reason of defendant's negligence, the jury can find the amount of the damages from the proof of the age of the deceased and the circumstances and condition in life of plaintiff.

2. **Negligence:** CITY: FALLING WALLS. A city is liable for injuries resulting from the walls of a house destroyed by fire having fallen, when their dangerous condition, by the exercise of ordinary care on its part, could have been discovered in time to have secured or taken them down.

3. **Nuisance:** LEASED PREMISES. A lessor is not liable for a nuisance created or maintained on the premises by the tenant.

4. **City of St. Louis:** CHARTER: PARTY. The fact that the city of St. Louis is liable in an action for damages for the nuisance does not make such lessor a necessary party defendant under the charter of the city. (2 R. S., p. 1626, sec. 9).

5. **Municipality:** DANGEROUS BUILDING: ORDINANCE. Whenever it is discovered by the officers of a city that a structure exists on the side of its street in so unsafe a condition as to endanger the safety of persons using the street, it becomes the duty of the city either to remove or secure it, and the city cannot relieve itself of this duty by an ordinance providing that the mayor shall require the owner of the building to have the same secured or removed within a time fixed in the ordinance, and, on his failure to do so, that the city shall perform the duty.

6. **Nuisance.** One is liable for injuries resulting from a nuisance continued after he came into the possession of the premises, though such nuisance was not created by him.

*Appeal from St. Louis Court of Appeals.*

AFFIRMED.

*Taylor & Pollard* for appellant, Pope Iron & Metal Company.

(1) The court erred in giving plaintiff's instructions one and two. These instructions directed the jury to find for the plaintiff, if they believed from the evidence that the wall's falling was caused either by the removal of machinery, iron and lateral supports, or by the damage done by the fire. We insist that such is not the law. If the taking away the machinery, iron and *debris* did not tend to weaken the lateral support of the wall, and make it more liable to fall, then this defendant is not liable for the injuries complained of. This defendant did not cause the fire, nor was it responsible for it. There-fore, if the sole cause of the wall's falling was the damage done by the fire, this defendant was not liable for damages. (2) The trial court erred in refusing to give instructions numbered one, two, three and four, asked by defendant. (3) The court erred in giving contradictory instructions and for this reason the cause should be reversed. *Stevenson v. Hancock*, 72 Mo. 614; *Staples v. Canton*, 69 Mo. 594; *State v. Simms*, 68 Mo. 309; *Turner v. Babb*, 45 Mo. 387; *Price v. Railroad*, 77 Mo. 512. (4) The damages assessed are excessive. *Porter v. R. R.*, 71 Mo. 83; *Rains v. R. R.*, 71 Mo. 169.

*Leverett Bell* for appellant, the City of St. Louis.

(1) There was no evidence of the value of the loss of services of plaintiff's son during his minority, nor of expenses arising from medical or funeral expenditures, and the plaintiff's recovery should have been limited to nominal damages. R. S., sec. 2123; *Porter v. Railroad*, 71 Mo. 66; *Rains v. Railroad*, 71 Mo. 164. (2) The lower court erred in refusing the instruction asked by the city of St. Louis, to the effect that there could be no

recovery against it because of the failure to join the owners of the property in the suit. 2 R. S. 1626. (3) There was no negligence on the part of the city government that would render the city liable. (4) The city ordinance, numbered 10,748, should not have been excluded when offered in evidence. It was a reasonable and valid ordinance and if its terms were complied with by the city, a complete defence for it was made out. *Armstrong v. Brunswick*, 79 Mo. 319.

*G. M. Stewart* for respondent.

(1) The Pope Iron & Metal Company was equally liable with the Broadway Foundry Company. *Tate v. Railroad*, 64 Mo. 149; *Pinney v. Berry*, 61 Mo. 359; *Rich v. Bastefield*, 4 C. B. 783; *Harris v. James*, 45 L. J. [Q. B.] 545; *Terry v. Ashton*, 45 L. J. [Q. B.] 260; *Broder v. Saillard*, 45 L. J. [Ch. Div.] 414. Where one person erects a nuisance and places it in the possession and under the control of another, and it is by him continued, each is liable to answer in damages for an injury resulting therefrom. *Staple v. Spring*, 10 Mass. 77; *Moon v. Dame Brown*, 3 Dyer, 330; *Bonnell v. Prior*, 2 Salk. 460. (2) The court did not give inconsistent instructions. They are to be taken as a whole, and if, when taken together, they are inconsistent, they are, *ex necessitate*, erroneous, but not otherwise. *Noble v. Blount*, 77 Mo. 235; *Edwards v. Cary*, 60 Mo. 572; *McKeon v. Railroad*, 43 Mo. 405; *Brown v. Ins. Co.*, 68 Mo. 133; *Wilson v. Railroad*, 71 Mo. 203. (3) The objection that there was no proof of damages is not well taken. *Lottman v. Barnett*, 62 Mo. 159; *Owen v. Brockschmidt*, 54 Mo. 285; *Nagel v. Railroad*, 75 Mo. 653. (4) The owners of the land were not necessary or proper parties to the suit, as claimed by appellant, the City of St. Louis. 2 R. S., p. 1626, sec. 9; Wood on L. & T., secs. 538, 541; *Buesching v. Gas Light Co.*, 73

Mo. 219. (5) The court did not err in excluding ordinance numbered ten thousand, four hundred and seventy-eight, offered by the city.

Norton, J.—This case is before us on the appeal of defendants from the action of the St. Louis court of appeals affirming a judgment of the circuit court of the city of St. Louis, rendered for plaintiff, in the sum of $3,500, for the killing of her son by the alleged negligence of defendants. The evidence shows that plaintiff's son, about ten years of age, was killed in Collins street, in the city of St. Louis, on the thirty-first day of March, 1881, by reason of the brick wall of a building adjacent to said street falling into said street and upon the son of plaintiff, while playing with two other boys. The evidence also shows that the lot of ground upon which the building, of which the falling wall was a part, stood, had been leased by the owners to Collins & Holliday for a term of ten years; that said Collins & Holliday erected the said building; that the leasehold interest having been encumbered by mortgage was sold under its provisions in 1876 to S. N. Holliday, who sold and conveyed the same to the defendant, the Broadway Foundry Company, in April, 1876; that said company owned and used the building as a foundry for working iron, from that time up to about the ninth of January, 1881, when the building was partially destroyed by fire, leaving the walls fronting on Collins street, in whole or in part, standing.

The evidence tended to show that in February, 1881, previous to the accident, the Pope Iron & Metal Company purchased of the Broadway Foundry Company the *debris* of the machinery and fixtures in the building; that the Pope Iron and Metal Company entered upon the premises soon afterwards for the purpose of removing the same, and in so doing weakened the wall so as to cause its fall. On the other hand there was some evi-

Grogan v. The Broadway Foundry Company.

dence tending to show that when the Pope Iron & Metal Company commenced removing the materials it had bought the wall was in an unsafe condition and in danger of falling, by reason of its having been weakened by the fire, and that it attempted to support the wall by means of ropes, etc. The evidence also tended to show that the wall after the fire was in a reasonably safe condition, and that public safety did not demand its immediate removal, and that it remained in that condition until within a short time before it fell. There was evidence tending to show that after the purchase of the *debris* by the Pope Iron & Metal Company it held joint possession and control of the building with the Broadway Foundry Company, and, on the contrary, evidence tending to show that the Broadway Foundry Company, after the date of the sale, surrendered entire possession and control of the building to the Pope Iron & Metal Company. There was evidence that on the day the wall fell there was an extraordinary and unusual windstorm ; and also evidence that the windstorm was only such as usually prevailed at that season of the year.

There was evidence tending to show that the wall, eight or ten days before it fell, had become unsafe and was in a shaky condition, and that Mr. Rohan, who was doing business across the street from where the wall stood, observing its condition, notified, on the twenty-ninth of March, the proper authorities in writing of its dangerous character ; that the next day the wall was inspected by an officer of the city, and that it fell on the thirty-first day of March. The City of St. Louis, The Broadway Foundry Company, The Pope Iron & Metal Company, as well as the owners of the ground, except one, on which the building stood and out of which the leasehold estate had been carved, were made parties defendant. Plaintiff recovered judgment against all the defendants, except the owners of the lots on which the building was erected. Each of the three defendants

against whom judgment was obtained has appealed. The specific objections relied upon by the city of Saint Louis will be considered in the order in which they are made.

It is urged that error was committed by the court in refusing the following instructions:

"1. The court instructs the jury that there is no proof in this case touching the amount of damages sustained by plaintiff by reason of the matters stated in the petition, and the jury, if they find the issues for the plaintiff, will assess the damages at a nominal sum."

"2. The court instructs the jury that, under the pleadings and evidence in this case, there can be no recovery herein against the city of St. Louis."

"3. If the jury believe from the evidence that the owners of the property occupied by the Broadway Foundry, on March 1, 1881, or any of them, resided in the state of Missouri on the fourteenth day of June, 1881, the day this suit was commenced, and have continued since that day to be residents of said state, then there can be no recovery in this case against the city of St. Louis, because said owners so residing in Missouri are necessary parties defendant in this proceeding, and have not been joined as such."

As to the first instruction refused, it may be said that while the only evidence touching the question of damages was that the son of plaintiff was ten years of age when killed, and showing the circumstances and condition in life of plaintiff, the instruction, under the ruling of this court in the case of *Nagel v. Mo. Pac. R. R. Co.*, 75 Mo. 653, in which a similar question was considered, was properly refused. See, also, cases of *Ihl v. Railroad*, 47 N. Y. 317; *City of Chicago v. Mayor*, 18 Ill. 349; *Owen v. Brockschmidt*, 54 Mo. 289. The second instruction was also properly denied, because there was evidence tending to show that ten or more

days before the wall in question fell it was in an unsafe condition, and that its dangerous condition, by the exercise of ordinary care, could have been discovered in time, either to have been taken down, or secured so as to have prevented its falling. The third instruction is based upon section nine of the charter (2 R. S., p. 1626), which provides that whenever the city shall be made liable to an action for damages, by reason of the negligence or carelessness of any person or corporation, and such person or corporation shall also be liable to an action on the same account, the party injured, if he sue the city, shall also join such other person or persons, or corporation so liable, if residing in the state so process can be served upon them as defendant or defendants, and no judgment shall be rendered against the city unless judgment is also rendered against such other person or corporation, so liable to be sued ; but no person shall be liable under this act to be sued jointly with the city who would not be liable to be sued separately, irrespective of its provisions. The evidence establishes the fact that the owners of the ground on which the building stood had, in 1873, leased the same for a period of ten years ; this lease had not expired, and the owners had accepted the Broadway Foundry Company as lessees in receiving rent according to its terms. Under this state of facts, during the life of the lease, they were not owners, and inasmuch as the nuisance was neither created nor maintained by them, but by the lessees, we know of no principle upon which an action could have been upheld against such owners, either jointly or severally. Wood on Landlord and Tenant, secs. 538, 541. In the case of *Buesching v. Gaslight Co.*, 73 Mo. 219, the nuisance existed on the property at the time the lease was executed, and it does not, therefore, apply to the facts of this case. The instruction was properly refused.

During the progress of the trial the city offered to read in evidence an ordinance to the effect that if the

mayor shall believe, either from the report of the chief of the fire department, or any other reliable information, that any building or structure is in a condition to endanger the lives of persons, he shall notify the owner or agent of such building or structure to have the same removed or otherwise properly secured within three days thereafter, and should such owner or agent fail to comply with the notice it shall be the duty of the fire department to proceed forthwith to have the same demolished. This evidence was excluded and, we think, properly. Whenever it is discovered by the officers of the city that a structure exists in the sides of one of its streets, so unsafe as to endanger the lives or persons of those passing over and along the street, the duty, either to remove it or to make it safe and secure, at once arises, and this duty cannot be shifted from the city to another so as to relieve it from liability for injuries occasioned by it. See *City of Kansas v. Huling, ante,* 203.

It is insisted by the Pope Iron & Metal Company that error was committed in giving the first and second instructions for plaintiff. The first of these instructions predicated the right of plaintiff to recover, both against the Broadway Foundry Company and the Pope Iron & Metal Company, upon the evidence showing to the satisfaction of the jury that said companies had joint possession and control of the ground and building and property thereon, and did remove therefrom machinery and iron, and in so doing, or from the fire, the walls of said building were deprived of necessary support, in consequence of which the wall fell upon and killed the son of plaintiff.

The objection urged to this instruction is that it authorized a recovery against the Pope Iron & Metal Company if the wall had been so weakened by the fire as to cause it to fall. If the wall had been so weakened by the fire as to make it dangerous, and the Pope Iron & Metal Company thereafter had joint possession

and control with the Broadway Foundry Company, either or both were liable, because in such case the nuisance was continued and maintained by both. *Tate v. R. R.*, 64 Mo. 149 ; *Pinney v. Berry*, 61 Mo. 359 ; *Staple v. Spring*, 10 Mass. 77 ; *Rogers v. Stewart*, 5 Vt. 215 ; Wood on Nuisances, 869.

The only difference between the first and second instructions is, that in the second instruction plaintiff's right to recover is predicated on an exclusive, instead of, as in the first, on a joint control of the building and this difference in no way affects the principle above stated. The instructions given by the court covered every phase of the case presented by the record, and, perceiving no error, the judgment is hereby affirmed with the concurrence of all the judges.