THOMAS E. PRIMM, Respondent, v. THOMAS R. WHITE et al., Appellants.

St. Louis Court of Appeals.    Argued and Submitted November 8, 1911.    Opinion Filed January 9, 1912.

1. **APPELLATE PRACTICE: Equity Cases.** The appellate court is charged with the duty of determining an equity case on the very right of the matter, under the evidence, irrespective of the conclusions arrived at by the trial court.

2. **INJUNCTIONS: Use of Telephone Lines: Scope of Relief.** In a suit to restrain defendants from preventing plaintiff's connection with a telephone line, where the issues were confined to defendant's acts as against plaintiff, the only possible judgment was one restraining defendants from cutting off plaintiff's use of the line; and hence a decree perpetually enjoining defendants from cutting and severing the wires and removing the posts and wires constituting the line, which extended from one town to another, was too broad.

3. **APPELLATE PRACTICE: Equity Cases: Correcting Erroneous Decree.** Where the form of a decree in an equity case is erroneous, the appellate court may correct it, or may remand the case to the lower court with directions to correct it.

4. **VOLUNTARY ASSOCIATIONS: Joint Telephone Line: Interest of Owners.** An association, formed by several persons to construct, maintain and operate a telephone line, for their convenience, and not for profit, each of such persons contributing to the construction and maintenance of the line, is a voluntary association and not a partnership; and such persons are owners of the line in common.

5. ———: ———: **Dissolution: Partnership.** A voluntary as-' sociation, formed by several persons to construct, maintain and operate a telephone line for their own convenience, the articles of agreement for which do not prescribe the length of time it is to continue nor by what rules it is to be governed, is subject to dissolution at the will of any of the associates; and this would be true even though it were a partnership, subject, however, to the right to have an accounting and, in some cases, to liability for damages.

6. **INJUNCTIONS: Voluntary Associations: Joint Telephone Lines: Enjoining Disconnection of Line: Establishing Right at Law.** A voluntary association, formed by several persons to construct, maintain and operate a telephone line for their own convenience, was dissolved, and part of the line was divided into shares (each of the owners, among whom was plaintiff, being given one of such shares), and the other part was sold at public auction. Thereafter, the owners of several of the shares connected the portions of the line alloted to them with the part sold at auction, thus forming a new line, and leaving plaintiff without connection. Plaintiff connected the part of the original line which had been allotted to him with this new line, and the owners of the new line disconnected it, whereupon plaintiff brought suit to enjoin the disconnection of his line. *Held*, that if plaintiff was wrongfully ousted and his property wrongfully appropriated by the division of the original line, his remedy was at law; that he must first establish his right at law, and until then, he did not have such a clear legal right as would warrant the interposition of a court of equity. *Held*, *further*, however, that he would have had a remedy to prevent threatened and irreparable injury, if he had acted promptly and his hands were clean.

7. ———: ———: ———: ———: **Adequate Remedy at Law.** In a suit to enjoin plaintiff's former associates in a voluntary association, formed to construct, maintain and operate a telephone line for their own convenience, from disconnecting his line from a new line defendants had created upon the dissolution of the association, plaintiff testified that he had sustained damage in a certain sum. *Held*, that he had an adequate remedy at law, and hence was not entitled to maintain the action for injunction on the theory of preventing a threatened and irreparable injury.

8. ———: ———: ———: ———: **Laches.** In a suit to enjoin plaintiff's former associates in a voluntary association, formed to construct, maintain and operate a telephone line for their own convenience, from disconnecting his line from a new line defendants had created upon the dissolution of the association, it was shown that plaintiff was present at a meeting of the members of the association, on June 29, 1908, when

they voted to dissolve and to allot a certain share ot a part of the line to each member and to sell the other part, and was notified on July 1 following that he would not be allowed to connect his part of the old line with the new line formed by connecting together certain parts of the line allotted at said meeting and the part sold, but he took no legal action to obtain the relief sued for until the present action was brought, on December 16, 1908. *Held*, plaintiff was guilty of such laches as barred his right to appeal to a court of equity.

9. ————: ————: ————: ————: **Clean Hands.** Where, after plaintiff was deprived by his former associates of the right to connect with a rural telephone line, he delayed for several months to secure redress in equity, during which time he attempted, on various occasions and at the expense of the connection of other members of the association with the line, to cut into it and make his own connection, he was himself a wrongdoer and did not come into equity with clean hands, and therefore was not entitled to injunctive relief.

10. **EQUITY: Clean Hands: Redressing Own Wrong.** One who attempts to redress a wrong done him and does so at the expense of others, does not come into a court of equity with clean hands, and hence is not entitled to injunctive relief against such wrong.

Appeal from Knox Circuit Court.—*Hon. Charles D. Stewart,* Judge.

REVERSED AND REMANDED    (*with directions*).

*F. H. McCullough* and *Raleigh & Dorian* for appellants.

(1) In cases of doubtful right a court of chancery will wait for the right to be settled at law, before it will interfere by the extraordinary process of injunction. Skrainka v. Oertel, 14 Mo. App. 479. (2) The legality of the proceedings whereby the partnership was dissolved, the property divided and allotted and the undivided portion sold, cannot be attacked or inquired into in this, an injunction proceeding, but the right of defendants (appellants), or either of them, to the ownership of said property must first be settled in a proper proceeding at law. Skrainka v. Oertel, 14

Mo. App. 479; Arnold v. Klepper, 24 Mo. 273; Eichel-kamp v. Schrader, 45 Mo. 505; Crenshaw v. Cook, 65 Mo. App. 264; Yytle v. James, 98 Mo. App. 337; Powell v. Canaday, 95 Mo. App. 713; Graham v. Womack, 82 Mo. App. 618; Mining & Milling Co. v. Moore, 130 Mo. App. 632; Smith v. Jameson, 91 Mo. 13. (3) Because, plaintiff respondent, being in a court of equity, he must come with clean hands; he cannot be heard to ask that defendants, appellants, be enjoined and restrained from committing acts which plaintiff, respondent, claims to be unlawful, but which he, plaintiff, respondent, was first guilty of doing. Skrainka v. Oertel, 14 Mo. App. 479; Little v. Cunningham, 116 Mo. App. 545; Burnham v. Rogers, 167 Mo. 24; Hingston v. Montgomery, 121 Mo. App. 462. (4) Delay and laches, in this case, has destroyed plaintiff's, respondent's, right to complain. Willards Equity, sec. 404; Stamper v. Roberts, 90 Mo. 683; State ex rel. v. Birch, 186 Mo. 221; State ex rel. v. Miller, 113 Mo. App. 670. (5) It is well settled that the decree which is awarded a plaintiff must be warranted both by the facts stated in the petition and by the proof. Reed v. Bott, 100 Mo. 62. (6) The appellate court will consider all the evidence, in an equity case, and make such findings as ought to be made. Jones v. Thomas, 218 Mo. 544.

*George R. Balthrope* and *David A. Rouner* for respondents.

(1) In the case, as shown by the evidence, the plaintiff had no adequate remedy at law to prevent irreparable injury or to recover adequate damages, and for that reason he was compelled to seek a court of equity, as provided for in section 2534, Revised Statutes 1909; Williams v. Harrison, 135 Mo. App. 152; Lambert v. Railroad, 212 Mo. 692; Downing v. Corcoran, 112 Mo. App. 649; Graden v. Parkville, 114

Mo. App. 533. (2) This was a volunteer association formed, not for the purpose of profits, but for the purpose of convenience and social relations, and without the agreement of all the parties in interest, the association could be dissolved only by a suit in partition. Meinhart v. Draper, 133 Mo. App. 50. (3) Plaintiff in severing the line between his house and that of defendants White for the purpose of holding communication, over the telephone line with his sick father-in-law, violated no rules of equity, for as the evidence shows the line was constructed mainly for the purpose of such communications, and the defendants, White, had negligently and willfully permitted the wire on their allotments to become so grounded and separated as to prevent such communications. Equity means the ideal conception of justice and right which stands outside of the positive law, but which is not in conflict with the law. Tiedeman on Equity Jurisprudence, chap. 1, page 5, Bouviers Law Dictionary (8 Ed), p. 472.

STATEMENT.—It appears that in the year 1901, plaintiff, in connection with some thirteen or fourteen of his neighbors, among them the four defendants in this case, obtained authority from the county court of Knox county to use a public road of the county in the construction of a telephone line from Edina, in the center of the county, to Colony, a town northeast of Edina, the line about sixteen miles long. As nearly as we can understand from the abstract and from the statement of counsel in the argument of the case before the court, the line as constructed ran out from Edina to the Plummer schoolhouse and then took off to the northeast to Colony. Plaintiff resided about six miles from Edina and ten miles from Colony. There do not appear to have been any articles of agreement, partnership or otherwise, drawn up but the line was connected with what is called the "Colony

switchboard," and conducted its operations under the name of Edina and Colony Telephone Company. In the construction of the line each of the parties to the agreement as well as, apparently, other citizens of Knox county, contributed either in money or labor, and each of the members of the association put in a telephone box and appliances at his residence and 'ran a line from there out to the main line. They appear to have kept up the whole line together, each contributing to a common fund for that purpose, until October, 1906, when they divided the line from Colony to the Plummer schoolhouse into twelve equal shares, each of the parties taking a share, that of plaintiff being the fourth share northeast of the schoolhouse, and each agreeing to keep the line up and in repair on his share, the association or company, as they called themselves, being given until the month of November, 1906, to put the line in good shape, keeping the wire twelve feet from the ground at the posts, and after that each member of the association was to keep his allotted part in good repair and if he did not repair two days after notice that it was out of order, the president was to be notified and he was to appoint a man to fix it up, and if the member of the association whose duty it was to repair it did not pay the expense incurred by the president in having it repaired, that member was to forfeit his share in the line, the company itself paying the expense. That part of the line between Edina and the Plummer schoolhouse was left as common property. The three sections or shares between that of plaintiff and the schoolhouse were assigned to three of the defendants, the share of the fourth defendant, Sweetman, apparently being north of that of plaintiff and between plaintiff and Colony. On May 21, 1908, the line appears to have broken and gone down and re-mained so from three to five weeks. It went down and broke on the sections belonging to either Thomas or M. W. White, two of the defendants, whose sections

were south of that of plaintiff, but not adjoining him. About the 30th of June, 1908, plaintiff appears to have cut into the wire in some way so as to get his own wire into connnection with the main line. To do this it appears that he had to cut off three of the defendants, namely, the two Whites and Mr. Galbrecht, members of the association living between plaintiff and Edina, so that they could not have any communication over the line with parties beyond plaintiff and on to Colony. In the meantime, that is on the 29th of June, the association held a meeting, at which apparently all of the members were present except a Mr. Snelling, the father-in-law of plaintiff, who lived north of plaintiff and who at the time was sick and who it was claimed was not notified of this meeting and was not represented at it. At this meeting it was voted to dissolve the association, each man taking out his share that had previously been assigned to him and that the portion of the line which had been undivided and which included the portion between the Plummer schoolhouse and the town of Edina, should be put up at auction and sold to the highest bidder for cash. This was forthwith done in the meeting and T. R. White, one of the defendants, who was also president of the association, bid a dollar for it. No one else bid any more and Mr. White testified that he had merely bid that amount to start it, but he being the last and the highest bidder, the unapportioned section was struck off to him for one dollar. It appears that the line was thereupon so constructed as to cut out the section which belonged to plaintiff and he was entirely disconnected with the line as newly arranged. The abstract is not very clear on this, but we gather from the statements of counsel at the argument before us that the line as reconstructed left the old line south of plaintiff, and looping around came back to the old line north of his section. At all events, as reconstructed, it entirely cut plaintiff off of the line. Whereupon

plaintiff himself, about June 30th, connected his wire with the main line at the two points where it had been disconnected. In doing this it appears that he untwisted or cut into the new line and connected his own, the effect of which was to cut off the three members of the association between him and Edina with any telephone connection with the members north of defendant and with the Colony switchboard. Plaintiff testified that when he did this, he restored the line as soon as he was through using it. Thereupon three of the defendants, members of the association, one of them being the Mr. Thomas White who, as before stated, had bought the section from the schoolhouse to Edina, notified plaintiff in writing, on July 1st, that he had acted unlawfully in connecting his line with their line, further notifying him that they had disconnected him with the line because they claimed that the line as then constructed was their property and that they had a right to protect it, and they notified him not to connect with it again. They further said in this notice: ''Now we ask for nothing but what is right and if you show to us legally that we are wrong we will submit, therefore we hereby notify you not to connect again.'' It appears that disregarding this notice, when plaintiff had occasion to use the line, he disconnected it at the points where it departed from the old line, cut in with his private wire and so restored his own connection along the line. The defendants on various occasions when they found that plaintiff had joined the wires at the two ends of his section and where they had been severed from the old line, disconnected them and so cut out plaintiff. Whereupon plaintiff, in December, 1908, brought this suit against the four members of the association here named whom he charged with this act. A temporary injunction was issued which on hearing was made perpetual and from the judgment making it perpetual the defendants have appealed to this court.

REYNOLDS, P. J. (after stating the facts).—
It is argued by counsel for appellants that plaintiff
could not recover because of laches in bringing the
suit; that is to say, the acts of severing the line oc-
curring June 30, 1908, and the suit not instituted un-
til December 16, of that year, plaintiff had rested on
his alleged rights too long to entitle him to come into
a court of equity for redress. It is also argued that
plaintiff having first undertaken to assert his own
right by restoring the connection over the protest and
in spite of the objections of defendants, does not come
into court with clean hands. The further claim is
made by appellants, that plaintiff has no right under
the circumstances of the case to maintain this suit in
equity for an injunction as it was his duty first to
establish his right at law; that the defendants were
entitled to a trial by jury on this and that a court of
equity should not use its powers in behalf of the de-
fendants asserting this right until the right was
clearly established.

In a suit in equity, this court, as an appellate
tribunal, is charged with the duty of determining it,
under the evidence, on the very right of the case, ir-
respective of the conclusion arrived at by the trial
court. We have read all the testimony as abstracted
with great care, aided also by the printed statements
and oral argument of counsel. Apparently we have all
the testimony before us that was before the trial court.
Without attempting to set out the evidence at length,
we have, as we think, given the essential facts.

At the outset we are compelled to say that the
injunction granted on final hearing is entirely to broad
within the case made by the petition and in proof.
After finding that there was a partnership and that
neither of the defendants had any right to sever the
main telephone line extending from Edina to Colony,
the decree proceeds to enjoin defendants and each of
them perpetually ''from in any manner cutting and

severing the telephone wire or wires of the Edina and Colony telephone line, extending from the city of Edina along and near the public road known as the Edina and Colony public road in the county of Knox, in the state of Missouri, to the town of Colony, and from cutting down and removing or destroying the posts and wire constituting said telephone line.'' This was completely outside of the issues and facts in the case. The issues were confined to the acts of defendants as against this plaintiff; the only possible judgment would be one restraining these defendants from cutting off plaintiff from the use of the line. Hence the decree is erroneous in that it is broader than warranted by the pleadings and facts. If the only error was in the form of the decree, we could correct that here or remand with directions to correct it. But we hold that on the facts, plaintiff was not entitled to any decree.

Obviously the trial court disposed of the case on the theory that the plaintiff and defendants and other members of the association were partners, and the line partnership property. That was error. The association of which plaintiff and defendants were original members, and which originally constructed the line, was of the kind which has been held by our court in Meinhart v. Draper, 133 Mo. App. 50, 112 S. W. 709, not to be a partnership. It is not pretended to be a corporation, although operated under what is ordinarily the name of an incorporated association. It was a mere voluntary association, originally formed for the purpose of constructing, maintaining and operating a line of telephone from Edina to Colony, not for profit but for the convenience of the individuals composing the association. Under such a state of facts the law applicable to the determination of the rights of partners has no place, even admitting that it was here correctly applied.

What the term or duration of the original association was to be, how long it was to continue, by what rules it was to be governed, does not appear from any articles of agreement in evidence. Even if a partnership, it could be dissolved at will by any partner, subject to the right of accounting (1 Collier, Part. [6 Ed.], p. 149, sec. 101), and in some cases to liability for damages. [Gaty v. Tyler, 33 Mo. App. 494.] Undoubtedly, as shown by the evidence, the original idea was that the line from Edina to Colony was to be owned in common. Each member and, apparently, even outsiders, contributed to its construction, and all the members contributed to its maintenance. The associates were originally owners in common, using the word common in its technical acceptation. But it appears beyond dispute that a few years—to be more accurate, about five years—after the formation of the association and the construction of the line, that is on the 30th of October, 1906, at a meeting of the associates, at which meeting plaintiff appears to have been present, a new arrangement was made, as we have seen, which set off the shares of the associate members in severalty. Plaintiff himself acknowledges the existence of this arrangement and that it was carried into effect. In point of fact, one of his complaints against defendant White is that when the line along one of these sections broke down on the 21st of May, 1908, White, as president of the company, was aware of it and had not caused it to be repaired.

It is not clear just what part of the old line continued to be held in common but whatever there was of it was put up at auction by a vote of the members of the association who were present at a meeting held on the 29th of June, 1908, and at that same meeting the association, incorrectly designated as a partnership, was dissolved. That was the meeting of June 29, 1908. The portion held in common was thereupon sold to T. R. White. At a former meeting held on

January 9, 1907, it had been resolved that when there was any share of stock of the company for sale that the company should set the price and should have the refusal of the right to purchase. These acts unmistakably show that all parties to the association recognized it as a fact, that there had been a partition of the line into several shares. When that part of the line undivided, apparently from the schoolhouse into Edina, which remained in the company, was sold in June, 1908, to Mr. White, the old association appears to have been dissolved or to have gone out of business, at least there was no other or further record of any proceedings after this meeting of June 29, 1908, introduced in evidence. Whether, in the absence and without the consent of all, the original association could be dissolved, need not be determined here. It was in fact then dissolved and the property, the line, divided among the members. It is claimed that this action was not to be binding on the member who was absent. No record shows this. But, if true, that member does not appear to have taken any steps in disaffirmance. If plaintiff, by that division, was wrongfully ousted and his property wrongfully appropriated, his remedy is at law. At all events, he must first establish his right at law, and until then he has not such a clear legal right as warrants the interposition of a court of equity. [Skrainka v. Oertel, 14 Mo. App. 474.] Independent of that right of action, plaintiff would have his remedy to prevent threatened and irreparable injury, if he had acted promptly, and his own hands were clean. But we do not think that in this case plaintiff's alleged injury was beyond reparation in damages, for he has himself, in answer to the direct question of his own counsel, having first stated that he considered the damage done him by being deprived of the use of the telephone to be inestimable, afterwards, on his counsel insisting that he fix some amount, stated that he fixed it at $500. This, in addition, as

we understand it, to the amount he claimed he had been put to by the way of outlay for work and labor, the telephone, poles and wire. Hence by plaintiff's own testimony he has an adequate remedy at law in an action for damages.

In addition to this we hold that the plaintiff has been guilty of such laches as bars his right to appeal to a court of equity. He knew, on the 29th of June, 1908, that the members of the association—all present but one—had voted to dissolve. He was notified on the first day of July following that he would not be allowed to connect with the line as reconstructed and as taken possession of by other members of the association under that resolution of June 29, 1908. He delayed until the 16th of December, 1908, before commencing this action. Under the circumstances that delay was too long to entitle him to apply to a court of equity for relief.

Nor does plaintiff come into court with clean hands. He not only delayed to apply to a court for relief but in the meantime undertook, on numerous occasions, to right his own wrong and redress his own grievances. More than that, and not content with redressing his own wrongs, according to his own admissions and testimony, he did it at the expense of the connection of other members of the association with the line. One so acting does not come into a court of equity with clean hands and is not entitled to the relief of a court of equity. [Little v. Cunningham, 116 Mo. App. 545, l. c. 549 et seq., 92 S. W. 734.] These acts of his were acts directly connected with and relating to the subject-matter of this litigation; that is to say, the maintenance of this telephone line. Hence the maxim is distinctly applicable in this case. [Hingston v. Montgomery, 121 Mo. App. 451, l. c. 462, 97 S. W. 202.]

Nor were these acts of plaintiff in disconnecting three of the defendants from the line, cutting them

off, cutting into it himself for his own convenience, joining his own line to it to the detriment of others, mere acts of inadvertence, or mere casual occurrences. According to plaintiff's own testimony, he did this upon several occasions when he desired to carry on communication over the line for his own use and benefit. Under such facts, plaintiff was himself a wrong-doer and the maxim applies in full force. [Burnham v. Rogers, 167 Mo. 17, l. c. 24, 68 S. W. 970.]

Our conclusion upon the whole case is that the learned trial court committed error in awarding the relief and granting the injunction. The judgment of the circuit court is reversed and the cause remanded with directions to vacate both the temporary and permanent injunction and to dismiss the case at the cost of the plaintiff, respondent here. *Nortoni* and *Caulfield, JJ.,* concur.

