Glenn SCHMIDT and Pauline Schmidt,
Plaintiffs-Respondents,

v.

Elmer J. PAUL and Gertrude A. Paul,
Defendants-Appellants.

No. KCD 28387.

Missouri Court of Appeals,
Kansas City District.

June 27, 1977.

Motion for Rehearing and/or Transfer
Denied Aug. 5, 1977.

James S. Cottingham, Lawrence E. Davis, Independence, for defendants-appellants.

Ralph E. Pratt, Independence, for plaintiffs-respondents.

Before DIXON, P. J., and WASSERSTROM and TURNAGE, JJ.

TURNAGE, Judge.

Glenn Schmidt and Pauline Schmidt brought suit against Elmer J. Paul and Gertrude A. Paul, his wife, for damages resulting from mud and debris washing from the Paul property onto the Schmidt property. The trial court, sitting without a jury, found in favor of Schmidt and awarded damages in the sum of $5,000.

On this appeal the Pauls contend (1) the judgment should not have been entered against Gertrude Paul because there was no evidence to show her husband acted as her agent or that she had otherwise actively caused the condition complained of; (2) the evidence does not support a finding of the existence of a nuisance on the Paul property; and (3) the Schmidts failed to prove the amount of their damages by substantial evidence. Affirmed.

A preliminary matter which requires disposition concerns the fact the Schmidts filed their petition in two counts, (1) for money damages, and (2) for injunctive relief. The court entered a judgment which awarded the sum of $5,000 to the Schmidts and made no mention of the count concerning an injunction.

If the judgment did not dispose of all issues, then it is not final for purposes of appeal. *Bolin v. Farmers Alliance Mutual Insurance Company*, 549 S.W.2d 886 (Mo. banc 1977). However, in this case it is easily ascertainable that the judgment is final. The Schmidts did not present evidence designed to support a request for injunctive relief, but rather presented their case on the theory they had been damaged in the enjoyment and occupancy of their home. The Schmidts presented evidence to show their entire complaint against the Pauls, both past and future, would be satisfied by an award of money. The Schmidts' evidence thus showed they had an adequate remedy of damages and, therefore, injunctive relief would not be proper. *Primm v. White*, 162 Mo.App. 594, 142 S.W. 802, 805[6] (1912); 43 C.J.S. Injunctions § 217, p. 954.

Although the Supreme Court has recently stated in *Bolin* it is not the function of an appellate court to piece and tack various parts of the record in order to establish a final appealable order, the evidence in this case is clear that Schmidt established an adequate remedy at law for damages and thus destroyed any cause of action for injunctive relief he may have pleaded.

This case illustrates the care which counsel and courts should exercise to make sure that judgments do dispose of all parties and issues so that no question as to the finality of a judgment may exist. The court should have entered a judgment denying the Schmidts any injunctive relief, but as heretofore stated, their evidence conclusively showed they were not entitled to such relief and so the judgment is in fact final and appealable.

The Schmidts and Pauls each owned and occupied a house and lot with the respective lots joining at the rear. The Paul property was located to the south and was on a higher elevation than the Schmidt property. Prior to the time Schmidt purchased his house and lot, a retaining wall had been built to support the Paul land which at that point was a little over five feet higher than the Schmidt property. When Schmidt purchased his property he was led to believe the retaining wall was located on his lot.

Mrs. Schmidt stated about three years prior to the filing of this lawsuit, Mr. Paul approached them with the plan to extend the retaining wall on both ends. The retaining wall, as originally built, was about 20 feet long opposite a patio at the rear of the Schmidt house.

Mr. Paul began construction of a wall with sand on the bottom followed by a series of concrete blocks stacked on top of each other without the use of any material to hold them together. Shortly after the construction of the extension, heavy rains caused the collapse of the partially completed extension. The blocks fell onto the Schmidt patio and yard. Mr. Paul then took his garden tractor, with a "dozer" blade, and began moving dirt on his property. There was a conflict in the evidence in which Mr. and Mrs. Schmidt testified Mr. Paul caused loose dirt to be pushed under a redwood fence which was some 26 inches south of the retaining wall and caused additional dirt to be pushed up so that it washed through the basket weave fence with each rain. Mr. Paul disputed this and stated the only dirt he moved was for the purpose of forming a trough to carry the water as it drained down his property into an adjoining street and to prevent it from draining onto the Schmidt property.

The Schmidts testified the loose dirt which Mr. Paul had pushed up against the fence, together with other dirt and debris connected with the wall extension, washed onto their property and covered their patio and part of their driveway. The Schmidts testified to hauling between 4 and 24 wheelbarrows of dirt and debris from their patio. The Schmidts further testified to extensive inconvenience and discomfort from the presence of mud and other debris washing onto their property, the unavoidable tracking of mud into their house, and the continued presence of dust in the house caused by wind blowing the dried mud. The Schmidts introduced evidence to show the only solution to the washing of mud and debris onto their property was the construction of a retaining wall 200 feet in length. There was evidence a retaining wall could be constructed with either poured concrete or masonry. The Schmidts testified as to their estimate of the amount of damages caused by their continuous cleaning efforts and the inconvenience and annoyance caused in the enjoyment and occupancy of their home and property.

When the Schmidts filed this suit it was alleged the retaining wall was on their own property, but a survey later performed at the Schmidts' request revealed the retaining wall was actually located on the Paul property.

■ The Pauls first raise the contention the court erred in entering a judgment against Gertrude Paul because there was no evidence to show she engaged in any activities which caused any damage to the Schmidts and because the evidence did not show Mr. Paul acted in any manner as her agent. The Pauls rely on cases involving the active commission of torts, but this case is governed by the law of the continuation and maintenance of a nuisance. The theory of the Schmidts was the maintenance and existence of a nuisance on the Paul property which caused them damage. In *Grogan v. Broadway Foundry Company*, 87 Mo. 321 (1885) the court held that a nuisance on land in the joint possession of two entities was a nuisance continued and maintained by both for which both were liable. 87 Mo. 329. In this case the Pauls admitted both Mr. and Mrs. Paul owned the property on which the nuisance causing damage to the Schmidts was located. The evidence was further that this was a city lot and the inference is inescapable that Mrs. Paul in living in the house located on their lot had notice of the existence of the condition which caused damage to the Schmidts. By her joint possession with her husband of the land on which the nuisance was located, she was jointly liable with him for the nuisance continued and maintained thereon. *Grogan, supra.*

■ The Pauls next contend the court erred in entering judgment against them because the Schmidts failed to prove by substantial evidence the existence of a nuisance. The facts heretofore recited were

amply supported by the evidence. The only evidence submitted came from the Schmidts except for the testimony of Mr. Paul who was called as an adverse witness by the Schmidts. In addition to the evidence already recited, the Schmidts testified after the blocks, mud and debris had washed onto their property they talked with Mr. Paul about removing the material and taking action to prevent its recurrence. They testified Mr. Paul told them if they wanted the blocks up they could take them up themselves. In addition Mr. Paul testified he had refused to repair or replace the washed out wall and would continue to refuse to do anything about it. The judgment was amply supported by substantial evidence.

The Pauls finally contend the judgment for $5,000 is erroneous because there was no evidence to establish and prove actual damages. The Schmidts produced several experts who testified as to the way the condition could be corrected to avoid damage to the Schmidts. This consisted of either building a retaining wall some 200 feet in length or terracing and sodding the Paul property. The Schmidt experts testified a masonry wall to accomplish the purpose would cost $7,640 and a poured concrete wall would cost $3,117.50. The Pauls made no objection to this testimony concerning these amounts as showing damage to the Schmidts. In addition the Schmidts testified they had been damaged a total of $3,000 because of the inconvenience and damage to the enjoyment of their home by reason of the presence of the mud, dust and debris. Further damages testified to were $350 for taking down the redwood fence in order to complete the retaining wall and $185 for survey and title search.

It is apparent the sum of $5,000 awarded by the court is well within the estimate of damages made by the Schmidts and their witnesses. There was no contrary evidence submitted by the Pauls.

The Pauls further contend as a part of this argument the evidence did not show a difference in rental value or useable value of their real estate and state this is the only measure of damages which may be applied resulting from a temporary nuisance. This contention was answered by the Supreme Court in *McCracken v. Swift & Co.*, 265 S.W. 91 (Mo.1924). In that case the court quoted with approval the rule applicable in nuisance cases at 265 S.W. 92[1]:

"A plaintiff who occupies a home is not limited to the recovery of the diminished rental value of it, but may be compensated for any actual inconvenience and physical discomfort which materially affected the comfortable and healthful enjoyment and occupancy of his home, as well as for any actual injury to his health or property caused by the nuisance."

The damages proved here fell within this rule.

The judgment is affirmed. *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976).

All concur.