JOSEPH E. MULVEY, Respondent, v. WILLIAM P. ANDERSON, and NOLEN V. TURNER, Appellants.

**Springfield Court of Appeals, January 30, 1915.**

1. **CONSPIRACY: Breach of Contract: Evidence Reviewed.** Action for alleged conspiracy wherein plaintiff contends that he was induced by false promises to go in with defendants and establish and build up a business in the nature of a partnership and that he was afterward excluded from such partnership business. Review of evidence.

2. **PARTNERSHIP: Partnership at Will: Dissolved When.** Where a partnership is formed with no specific time fixed for its continuance, it is a partnership at will which may be dissolved by either party at any time.

3. **TORTS: When Action in Tort Will Not Lie: Breach of Contract.** A fictitious corporation was organized by plaintiff and defendants. Under promise of defendants that they would continue to employ him as a salesman, plaintiff assigned to defendants his shares of stock, except one, which had been issued to him. Plaintiff could not sue in tort because defendants discharged him from the position of salesman, there being no fraud or misrepresentation on the part of defendants.

4. **EMPLOYER AND EMPLOYEE: No Fixed Time of Employment: Employer Not Liable for Discharge.** Where there is no contract of employment for a fixed time, an action does not lie in favor of an employee for a wrongful discharge.

Appeal from Dunklin County Circuit Court.—*Hon. W. S. C. Walker,* Judge.

REVERSED.

*Henry W. Blodgett* and *Ely, Pankey & Ely* for appellants.

(1) There is such a fatal variance between the allegation of the petition, that there was organized "a pretended and fictitious corporation" and the plaintiff's own proof of a "valid and bona-fide one," as to

amount to an absolute failure of proof of the charge as made. Sears v. Mo., etc., Co., 56 Mo. App. 122; Pruett v. Warren, 71 Mo. App. 84; Hackett v. Van Frank, 119 Mo. App. 648. (2) If the plaintiff has any cause of action at all based on the facts of this case, it is solely for an accounting against the Manufacturers Cooperage Company and its officers, as such.

*Charles Claflin Allen* and *John H. Bradley* for respondent; *J. L. Fort* of counsel.

(1) The petition states a cause of action whereby plaintiff was induced by the fraudulent misrepresentations of the defendants, upon which he relied, to change his status to his injury. The judgment was within the law and just. Mosby v. Commission Co., 91 Mo. App. 500, 507. (2) This action sounds in tort, not contract. (3) In conspiracy to defraud, all of the parties are jointly and severally liable. Lumber Co. v. Dallas, 165 Mo. App. 49.

STURGIS, J.—This case is somewhat out of the ordinary, though the plaintiff says the petition is "very simple." As near as we can describe the cause of action in a single sentence, plaintiff asserts a conspiracy by the defendants to induce him by false promises to go in with them and help establish and build up a prosperous and going business concern in which each would share in the profits with the intention, afterward carried out, of wrongfully excluding him from such established business. The plaintiff was allowed to recover as damages the value of his proportional share of the common venture or business as a going concern at the date of the alleged wrongful expulsion of plaintiff therefrom. The plaintiff insists that his action is one sounding in tort the basis of which is fraud and deceit, and is not one arising on contract. The cause was tried to a jury which awarded plaintiff $5000 damages.

Mulvey v. Anderson.

Going more into details, it is alleged and proven that defendants were large manufacturers of cooperage stock and desired to form the business concern mentioned as a selling agency for the products of their factory, though other similar products would be bought and sold to a limited extent. The plaintiff was an experienced and successful salesman in this line and held a position as salesman with another company. The defendants were men of means and good commercial standing and promised that if plaintiff would go in with them and act as manager and salesman for the new concern he would be paid a salary of $200 per month and share in the profits, one-third to each, and that defendants would back the concern so as to give it credit and standing and let it sell their products. Defendants were also to furnish what ready money was found necessary (which was not a large amount) to carry on the business. To this arrangement plaintiff agreed and gave up his other employment.

It was also agreed that the business venture would take a corporate name, the "Manufacturers Cooperage Company," though nothing was done or to be done in organizing this corporation except to get a certificate from the Secretary of State showing the name of the corporation with a capital stock of $30,000. The plaintiff and defendants were represented as *subscribing* for one-third each of this capital stock. Plaintiff testified that it was understood that the capital stock was not to be paid and no certificates of stock were to be issued.

As the business was carried on under this corporate name for two and a half years and it is plaintiff's interest in the business venture under that name that he claims he was wrongfully and fraudulently deprived of, we adopt what plaintiff says in his brief as properly characterizing this corporation, as follows: "The corporation, though organized formally, was a mere instrument, as means to an end, in the accomplishment

of the plans and purposes of the defendants. It is so pleaded, and the uncontradicted testimony shows it to be so. The real undertaking was to divide profits independently of the corporate forms. There were no meetings, no stock was issued, no money paid in or ever intended to be paid in, no corporate act was done until December, 1912, when the plaintiff signed as an officer and assigned as an individual the certificates issued to him and turned them over to the defendants. As between the parties here in court, the corporation was 'a pretended and fictitious' corporation.'' The liability of plaintiff and defendants to creditors of this fictitious corporation is not here involved, though defendants say their agreement was to take care of any such creditors. It seems to us that as between these parties the business was more in the nature of a partnership, in which one partner, plaintiff, received a salary in addition to his share of the profits.

It is conceded that the business was carried on with some success under this name for two and a half years; that defendants during that time performed all their agreements, furnished the necessary money, gave the business credit and standing and allowed it to sell their cooperage products. The plaintiff acted as manager and salesman, was paid his salary, and has received, or defendants concede his right to receive, his full share of the profits. It should be stated, however, that during the course of the business a fourth party was taken in on the basis of sharing the profits thereafter, one-fourth to each. Plaintiff does not complain of, and the evidence does not show, any violation by defendants of any agreement or duty on their part in the conduct of the business prior to the alleged wrongful expulsion of plaintiff from his further participation therein, which is presently to be noted. This case proceeds on the theory that while all the things agreed to be done were done, yet, they were done in bad faith

187MoApp28

by defendants for the purpose of utilizing plaintiff's help in building up a profitable going business concern and then depriving him of further participation therein.

It is not shown, or claimed, however, that there was any agreement as to how long the business venture or plaintiff's relation thereto would continue. If we regard it as a partnership, it was one at will and could be dissolved at the pleasure of either party. [Primm v. White, 162 Mo. App. 594, 604, 142 S. W. 802; Gaty v. Tyler, 33 Mo. App. 494, 498.] If the business had been conducted by a corporation, with stock issued and paid for and a board of directors, the three parties must have been the directors and it would have been in the power of the two defendants, owning two-thirds of the stock and being two of the three directors, to have so controlled the corporate affairs as to have discharged plaintiff from its employ at any time. In this state of affairs, and some two and a half years after the business enterprise was launched, some dissatisfaction arose as to plaintiff's management and work as salesman and some change in this respect was talked of by defendants. The cause of this dissatisfaction was not treated as being material in the trial court and is left somewhat to surmise. The material fact is that plaintiff, in view of his possibly quitting the business, asked that his stock in the corporation be issued to him. Defendants objected to doing this on the ground that this would enable him to transfer it to some outside party and thus embarrass the business, and defendants rightfully so objected on the conceded understanding that no stock was to be issued and certainly none had been paid for. An agreement and understanding was then reached and carried out between the parties, that as a matter of form certificates of stock covering the one hundred shares subscribed by plaintiff in the fictitious corporation should be issued and ninety-nine of such shares assigned by him

to the defendants, leaving plaintiff the owner of one share so as yet to keep up the form of a corporation. Plaintiff asserts in his brief that this was done "under misrepresentations (promises) that they( defendants) would continue him as before under their original agreement. And plaintiff would not, and did not sign, or assign his stock until that promise was made by defendants to him, and then only in reliance upon it."

The evidence fully sustains this contention. The plaintiff did not consent to issue the certificates and assign same until he had thoroughly considered the matter and asked the advice of his kinsman and attorney, who largely brought about the understanding and agreement. He testified, using the name "Joe" at times to describe plaintiff, as follows: "Mr. Anderson said that if he would sign and assign the stock to Turner and Anderson, forty-nine shares to Turner and fifty shares to Anderson he would hold him in the company. . . . Q. What was said as to what they would or would not do? A. Mr. Anderson said that they would retain him in their employ. Mr. Anderson said and Mr. Turner said—Mr. Anderson said that he had no desire to turn Joe out of the company; that he would retain him in the employ of the company and still give him a part of the earnings on the stock. I have Mr. Anderson's letter and that was understood between all of us about these matters by which, as I supposed, he was to be retained in the company and he was still to draw one-third of the net profits. . . . Q. State whether you communicated that statement to Mr. Mulvey? A. I did; even more than that; while I told him that I thought Mr. Anderson was absolutely an honest man and I told him that while Mr. Anderosn hadn't talked in as plain a manner as he might have done I said that much and I submitted that proposition when I talked to Joe. I told him that Mr. Anderson would do more than that and I said to him: 'Assign the stock and Mr. Anderson will treat you decently,'

that is exactly what I said. . . . Mr. Anderson told me then upon his honor that if he became dissatisfied in the future he would let me know it and give me a chance to straighten it up—get it fixed up. I told him that I thought that some parties in the office was the cause of this thing. In about a month instead of letting me know he wrote me a letter in which he said that he had turned Joe off.''

The defendants concede that they agreed to have plaintiff retained in his position as manager and salesman on the same terms as before, notwithstanding his surrender of all claim to the stock. Under plaintiff's concession that the stock was never to be issued or paid for and that the corporate form was a mere shell, we do not see that the assigning of the fictitious stock cuts much figure in the transaction. In any event, the record fully shows that plaintiff voluntarily surrendered any rights he had to this stock on defendants' promises to retain him in his then employment and position on the same terms as before. Plaintiff was so retained for another month and was then discharged. Plaintiff seeks to hold defendants individually, rather than the corporation, responsible for his discharge.

Do these facts constitute a cause of action sounding in tort and based on fraud? We think not. In its last analysis the only dereliction on defendants' part is that they failed and refused to keep the spirit, and possibly the letter, of their agreement to retain plaintiff in his position of employment and pay him for same $200 per month and one-fourth of the net profits of the business. It is evident that had they done this no cause of action would exist of the kind here alleged. Even if we concede that plaintiff surrendered a valuable right in consideration of defendants' promises of future employment, he would be in no better position in this action. Defendants made no misrepresentation and were guilty of no fraud, unless we call it a fraud and misrepresentation for one person to make a prom-

ise as to future employment which he does not fulfill. The plaintiff might have exacted a contract that defendants keep him in this position and employment for a definite length of time. In such case a cause of action would arise for a wrongful discharge, but plaintiff is not seeking to recover on any such theory. Treating, as plaintiff does, the sale of defendants' cooperage stock as defendants' business, in the absence of a contract of employment for a definite time no action lies for a wrongful discharge. [26 Cyc. 997; Davis v. Insurance Co., 181 Mo. App. 353, 356, —— S. W. ——.] Plaintiff seems to have been willing to trust to defendants' fairness in the future conduct of the business and his own ability to do his work in a manner satisfactory to all concerned. Whatever plaintiff's rights were prior to his surrender of his stock in the fictitious corporation, he did that voluntarily, relying, as he now asserts, on defendants' promises ''that they would continue him as before under their original agreement,'' and his prior rights were merged in the new agreement and plaintiff must recover, if at all, for a violation thereof. There is no basis, on the facts shown, to sustain this action.

The judgment of the trial court will be reversed.

*Farrington, J.,* concurs. *Robertson, P. J.,* concurs in reversing the cause but thinks that it should be remanded.