J. F. BEEBE, RESPONDENT, v. THE COLUMBIA AXLE CO., APPELLANT.— 117 S. W. (2d) 624.

Kansas City Court of Appeals. April 4, 1938.

214

 

*Garrett & Ruark* for respondent.

*Pruitt & Grealis* and *Calvin Vandeventer & Kimbrell* for appellant.

REYNOLDS, J.—This appeal comes to us from the circuit court of Jackson county. The suit grows out of an oral contract made between the plaintiff and the defendant on or about January 28, 1935, running for an indefinite period of time, by the terms of which the defendant employed the plaintiff to act in a certain restricted territory, embracing all of the State of Kansas and parts of western Missouri, as its exclusive agent or factory distributor of certain automobile and truck equipment manufactured by it, which contract by mutual oral agreement was afterward, in February, 1935, modified so as to eliminate the western part of the State of Kansas as a part of such territory.

The defendant, at the time mentioned, was engaged in the business of manufacturing axles, known as "Dual Ratio" or "Two Speed" axles, for Ford passenger cars and Ford trucks; and it was these axles that the plaintiff was employed to sell or distribute.

Confirmation of such oral agreements was made by the defendant by letters of dates January 29, 1935, and February 15, 1935, written by its director of sales, who had negotiated the contract with the plaintiff in behalf of the defendant. The letter of date January 29, 1935, was written to the defendant, apprising it of the negotiation of such contract and the terms thereof; and a copy of such letter was at the same time mailed to the plaintiff. The letter of date February 15 was written to the plaintiff.

By the terms of said contract, the retail prices agreed upon at which the plaintiff was to sell the defendant's axles were $69 for the passenger car axle and $125 for the truck axle; and it was agreed that the plaintiff should be allowed a discount of 50 per cent from said list or retail price and that he in turn should allow the dealers to whom said axles were sold a discount of 25 per cent, resulting in commissions as compensation to the plaintiff of $17.25 for each passenger car axle sold and $31.25 for each truck axle sold. Thereafter, about May 20, 1935, by mutual agreement, the price at which the plaintiff

should sell the passenger car axle was changed to $6950; and the plaintiff's discount was changed to 40-10 and 5 per cent; and his discount on the truck axle was changed to 40 per cent. It does not appear that any change was made in the dealers' discount either upon the passenger car axle or the truck axle.

There is evidence in the record showing that the plaintiff, immediately upon the negotiation of said contract, entered upon his employment and that he performed all of the duties and obligations imposed upon him by the terms of said contract and devoted all of his time to the purposes of developing and promoting the sale and distribution of the defendant's axles or was at all times willing and ready to perform such contract. Preparatory to and for the purpose of performing said contract, he hired a salesman and other employees; set up an office; employed help in the maintenance of such office; and, in connection with the performance of such contract, traveled over his territory, contacted with and kept in touch with the dealers therein, purchased two Ford cars and equipped them with the defendant's axles, expended in such behalf in excess of the sum of $1500, and performed work and services of the value of $4000.

On December 5, 1935, after the plaintiff had expended money and had obligated himself as stated in the last preceding paragraph and had performed work and services in connection with the performance of his contract, the defendant terminated such contract and discharged the plaintiff and afterward appointed another in his stead and continued the development of the business started by the plaintiff. During the period that the plaintiff was in the employment of the defendant, acting as its agent and distributor, he received as commissions on sales of axles the net sum of $2500; and, during the same period, the defendant invaded the territory of the plaintiff by circularizing the dealers therein and selling to them at much reduced prices from those which the plaintiff was authorized to quote and act upon.

The evidence does not show that, prior to or at the time of the plaintiff's discharge by the defendant, the defendant made any complaint regarding the services rendered by the plaintiff. Upon the other hand, the defendant's director of sales, through whom the contract with the plaintiff was negotiated and under whose supervision the plaintiff performed his services, testified that he thought that the plaintiff's standing in his territory as a salesman was very good and that, at the time he was testifying, he still thought so; that "his manner of approach, his enthusiasm, dynamic personality and pleasant—" rendered him a good salesman; and that he, at all times until his discharge on December 5, considered him the exclusive agent of the defendant in the territory allotted to him.

The plaintiff, in his petition, sets out the contract and the modification thereof and states that, on December 5, 1935, he was unlawfully discharged by the defendant, without just cause and without being given a reasonable opportunity to avail himself of the results of his preliminary efforts and his expenditures, and that, upon such discharge, the defendant appropriated unto itself the results of such services and expenditures. The petition sets out the prices agreed upon at which the plaintiff should sell the defendant's axles, the discounts to be allowed him as compensation, and the discount to be allowed the dealers by him upon a sale to them. It alleges that, in pursuance of such contract and after entering upon its performance, he had expended and obligated himself for the reasonable sum of $1500 for wages of salesmen and other employees and for rent, office, traveling and other expenses, as shown by the exhibit attached to the petition; that he had performed work and services in connection with the performance of such contract of the value of $4000; that he had received as commissions or compensation on sales made during the time he was engaged in the performance of such contract the net sum of $2500. And it seeks judgment against the defendant for the difference between the sum of the expenditures and the value of his work and services less the commissions received by him, in the sum of $3000.

The petition, as originally filed, was amended by interlineation, by the insertion of the words "and obligated himself to expend for" immediately after the word "expended" in the seventh paragraph thereof and by the insertion of the words "as shown by Exhibit 'D' attached hereto and made a part hereof" after the word "expenses" in the seventh paragraph and was further amended by interlineation during the trial of the cause by the insertion of the word "reasonable" between the words "the" and "sum" in the seventh paragraph thereof, so that the seventh paragraph as amended was and is in words, as follows:

"Plaintiff states that after entering into said contract and prior to said discharge, he, in and about the performance of said contract. expended and obligated himself for. the reasonable sum of One Thousand Five Hundred ($1500) dollars in wages of employees, office expenses, traveling expenses, rent and other expenses, as shown by Exhibit 'D' attached hereto and made a part hereof and that he performed work and services of the reasonable value of Four Thousand ($4000) Dollars; that he received as commissions or gross profits on sales of axles during said period the net sum of Two Thousand Five Hundred ($2500) Dollars, and that by reason of the foregoing premises, he has been damaged in the sum of Three Thousand ($3000) Dollars."

The answer tendered a general denial, coupled with a plea of section 2967 of the Statute of Frauds, Revised Statutes of 1929, and

that part thereof which provides: "No action shall be brought . . . upon any agreement that is not to be performed within one year from the making thereof, unless the agreement upon which the action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or some other person by him thereto lawfully authorized . . ." and the further plea that the contract in this case was one which could not be performed within one year from the date of the making thereof and, by reason thereof, is invalid, nonenforceable, void, and of no legal force and effect as between the parties and that the defendant is not indebted to the plaintiff on account of any matters based upon or growing out of the contract in any form whatever.

The reply is a general denial.

The trial was before the court with a jury. At the conclusion of the plaintiff's evidence and again at the conclusion of the whole evidence, the defendant requested peremptory instructions in the nature of demurrers directing a verdict for it, which, in each instance, were by the court refused. The cause being submitted to the jury, the jury returned a verdict for $2246 for the plaintiff, upon which judgment was duly rendered in conformity therewith in favor of the plaintiff and against the defendant, from which judgment the defendant, after unsuccessful motions for a new trial and in arrest of judgment, prosecutes this appeal.

## OPINION.

1. The first point made by the defendant is as follows:

"The contract which the plaintiff alleged in his petition, and which his testimony tended to establish, being oral and for an indefinite period, was terminable, without liability, at the will of either party; and, therefore, the court erred in not sustaining the defendant's demurrer offered at the close of all the testimony; and further erred in submitting this cause to the jury; and further erred in not setting aside the judgment herein; and in not granting the defendant a new trial of this cause."

It argues, as stated in such point, that the contract in question, being oral and being for an indefinite period of time, was subject to termination at pleasure; that it was one which could not be performed within the period of one year from the making thereof and was therefore void and nonenforceable, so that no right of action could be predicated thereon or upon a breach thereof; that such contract was terminable without liability at the will of either party; and that, therefore, the court erred in submitting the cause to the jury and in refusing to sustain its demurrer offered at the close of the whole testimony.

The contract in question does not appear to be a contract of sale, but appears to be a contract of agency. It may be conceded, as con-

tended, that the rule is that an ordinary, oral contract of employment, such as one of agency, which is wholly indefinite in point of time as to duration or is not one to be performed within a year will not be considered as a perpetual contract and enforced as such, but, on the contrary, may be terminated at any time by either party. [Boogher v. Maryland Life Ins. Co., 8 Mo. App. 533; Meyer v. Pulitzer Pub. Co., 156 Mo. App. 170, 136 S. W. 5; Staroske v. Pulitzer Pub. Co., 235 Mo. 67, 138 S. W. 36; State ex rel. Walker v. Walker, 88 Mo. 279, l. c. 283 and 284; Davis v. Pioneer Life Ins. Co. of America, 181 Mo. App. 353, 172 S. W. 67; Brookfield v. Drury College, 139 Mo. App. 339, 123 S. W. 86; Minter v. Tootle-Campbell Dry Goods Co., 187 Mo. App. 16, 173 S. W. 4; Mulvey v. Anderson, 187 Mo. App. 430, 173 S. W. 738; Latshaw v. Stoddard (Mo. App.), 194 S. W. 727; Ogden v. Atlas Brewing Co. (Mo. App.), 248 S. W. 644; Wolfe v. Stark Bros. Nurseries & Orchards Co. (Mo. App.), 288 S. W. 1004; Massachusetts Bonding & Ins. Co. v. Simons-Shields-Lonsdale Grain Co., 226 Mo. App. 1071, 49 S. W. (2d) 645; Bell v. Faulkner (Mo. App.), 75 S. W. (2d) 612.]

In Meyer v. Pulitzer Publishing Company, *supra,* after quoting the rule as stated above, it is said that, though such be the rule, it is subject to one exception and one limitation. The exception is that a principal cannot thus summarily revoke the authority of his agent in any case where the agent has acquired, with the **authority** conferred, an interest in the subject-matter of the agency.

But an interest sufficient to render an agency irrevocable must be an interest in the thing itself and the property which is the subject of the agency; and a mere interest in results or proceeds of the execution of the authority, as by way of compensation, is not enough. [Meyer v. Pulitzer Pub. Co., *supra.*]

The limitation is that, in any case of an indefinite agency where it is revoked by the principal, if it appears that the agent, induced by his appointment, has in good faith incurred expense and devoted time and labor in the matter of the agency without having had a sufficient opportunity to recoup such from the undertaking, the principal will be required to compensate him in that behalf; for the law will not permit one thus to deprive another of value without awarding just compensation. The just principle acted upon by the courts in the circumstances suggested requires no more than that, in every instance, the agent shall be afforded a reasonable opportunity to avail himself of the primary expenditures and efforts put forth to the end of executing the authority conferred upon him and that, if such opportunity is denied him, the principal shall compensate him accordingly. [Meyer v. Pulitzer Pub. Co., *supra*; Glover v. Henderson, 120 Mo. 367, 25 S. W. 175; Royal Remedy & Extract Co. v. Gregory Grocery Co., 90 Mo. App. 53; Mechem's Agency, section 620.]

There is and can be no claim made in this case that the defendant had conferred on the plaintiff under the contract in question a power coupled with an interest, so as to bring him within the exception to the rule; and it follows that, as he had no interest in the subject matter of the agency, the principal had the power and, in a qualified sense, the right to revoke the agency at will. [State ex rel. Walker v. Walker, *supra*; Mechem's Agency, section 204.] But he did, under the facts and circumstances in evidence in this case, come within the limitation mentioned.

The question of the liability of the principal to the agent for services rendered under the circumstances shown in the record in this case is wholly different from the power or even the right of the defendant to terminate the agency. Contracts of agency are numerous and widely variant in their objects, purposes, and terms, so that the question of the compensation of the agent when the agency has been revoked by the principal will depend on a variety of circumstances. [Glover v. Henderson, *supra*.]

"It is laid down by a recent textwriter that the mere fact that an agent is employed to perform a certain act will not, of itself, amount to an undertaking on the part of the principal that the agent shall be permitted to complete the act at all events, and the principal may fairly, and in good faith, revoke the agency, without liability, at any time before performance. But where an agent is employed to perform an act which involves expenditures of labor and money before it is possible to accomplish the desired object, after the agent has in good faith incurred expense and expended time and labor, but before he has had a reasonable opportunity to avail himself of the results of this preliminary effort, it could not be permitted that the principal should then terminate the agency, and take advantage of the agent's services, without rendering any compensation therefor. [Mechem, Ag., sec. 620.]" [Glover v. Henderson, *supra*, 25 S. W. 177.]

This text is approved in Glover v. Henderson, *supra*, 25 S. W. 177, in the following language: "This is good sense, and, we believe, good law."

The same doctrine was asserted in the Royal Remedy & Extract Co. v. Gregory Grocery Co., *supra*, 90 Mo. App. 53, 1. c. 59, by this court.

There is evidence in the record from which it might be found that the contract as made, although indefinite as to period of duration, was nevertheless in contemplation of the parties to continue until the Ford Motor Company took over the handling of the defendant's axles, which, it was thought, might not happen under from two to five years or at least for a sufficient period of time to permit a good return on the plaintiff's investment. However, it appears that it was questionably in the minds of the parties when such event would

happen and that it was anybody's guess as to when it would happen. That such was in contemplation did not therefore serve to make the agency one for a definite period of time. The record shows that, at the time the defendant discharged the plaintiff and took over the territory which the plaintiff had been working and which had been allotted to him under his contract, the Ford Motor Company had not taken over the handling of the defendant's accessories in that territory and that the defendant afterward appointed another agent in place of the plaintiff and continued the sales and distribution of its axles in that territory direct to dealers.

The record further shows that the plaintiff had expended sums and incurred obligations therefor in excess of $1500, reasonably necessary in his preliminary efforts for laying the foundations for a successful business in the sale and distribution of the defendant's axles in his territory. It further shows that he contributed work and services in laying the foundation for such business of the reasonable value of $4000; that the time during which his contract was permitted to remain in force by the defendant was not sufficient to afford him reasonable time in which to recoup his expenditures and the value of his work and services; and that the defendant, upon his discharge, appropriated to its own behalf and profit the benefits of the expenditures and services to which he (the plaintiff) was entitled and, upon such benefits as a basis, afterward continued the operation and development of the business in said territory built up by the plaintiff.

The question is whether the defendant, having thus revoked the plaintiff's agency, is liable to the plaintiff for the reasonable value of his services rendered and his expenditures incurred. That it is so liable under the authorities to which reference has been made, we think there is no question. The point is ruled against the defendant.

2. A further point made by the defendant is as follows: The trial court erred in not sustaining the defendant's demurrer at the close of the case, in submitting the cause to the jury, in not setting aside the judgment, and in not granting a new trial to the defendant (1) because it was affirmatively established by the testimony that the contract in question was too indefinite as to quantity, prices, terms, and obligations; (2) because it was affirmatively established by the testimony that said contract was unilateral and lacking in mutuality and, consequently, bound neither party thereto, unless such party chose to be bound thereby; and (3) because it was affirmatively established by the testimony that said contract was therefore void and nonenforceable—relying upon section 2968, Revised Statutes of Missouri, 1929.

The defendant proceeds on the theory that the contract in question is a sales contract and is void (for the reasons stated) under section 2968, Revised Statutes of 1929. The defendant did not plead

section 2968 as a defense, but, instead, pleaded section 2967. It admits that an oral contract was made; and, under such circumstances, section 2968 must have been pleaded as a defense before being available as such. [Graff v. Foster, 67 Mo. 512; Missouri Real Estate Syndicate v. Sims, 179 Mo. 679, 78 S. W. 1006; Mathews v. Wallace, 104 Mo. App. 96, 78 S. W. 296; Gardner v. Armstrong, 31 Mo. 535; Martin v. Ray County Coal Co., 288 Mo. 241, 232 S. W. 149.]

Section 2968 deals merely with contracts for the sale of goods, wares, and merchandise. It has no application to mere agency contracts.

If the contract in question were a contract of sale, the question of its indefiniteness as to quantity, prices, terms, and obligations would be of importance; and the authorities cited by the defendant in support of its contentions, based upon such matters, would be applicable; but, not so being, such authorities are inapplicable. They involve sales contracts only.

In Maninan Medical Supply, Inc., v. Ft. Dodge Serum Co. (C. C. A. 8), 47 F. (2d) 458, 462, it is said: "If the contract here in question were a pure contract of sale, the criticism of uncertainty would be formidable. But we have held that the contract is not purely one of sale. It partakes of the character not only of a sales contract, but also of a factorage contract, and perhaps also of a sales agency contract. In the two latter classes of contracts, uncertainty as to amount is inherent in their very nature. . . . Contracts of factorage or sales agency are not invalid for such uncertainty."

The distinction between an agency contract and a sales contract is maintained throughout in Glover v. Henderson, *supra.*

As to the defendant's criticism that the contract in question was unilateral and lacking in mutuality so that neither party was bound thereby, it has been held that, although a contract on its face and by its terms appears to be obligatory on one party only, yet, if it is the manifest intention of the parties that there should be a correlative obligation on the other party, the law will imply such obligation. [Lewis v. Atlas Mut. Life Ins. Co., 61 Mo. 534; Glover v. Henderson, *supra;* 13 C. J., art. 180, p. 334.]

The question, after all, is one of intention, to be gathered from the terms of the contract and the tenor thereof, considered in the light of the subject-matter of which the contract deals.

In this case, the contract was clearly one by which the defendant employed the plaintiff as salesman and distributor of its axles, which necessarily, when accepted by the plaintiff, imported a correlative obligation on his part to act as such salesman and distributor in the territory specified. An agreement to serve may be implied. [12 C. J., art. 180, *supra.*] The contract could be brought into existence only by virtue of the recognition by the parties of the correlative ob-

ligations of the one to the other. It was entered into upon a mutual understanding of the obligations to be assumed by each.

Moreover, the evidence in this case shows that both the parties accepted such contract and entered upon the performance thereof and continued in such performance for practically the period of one year. Even if invalid and nonenforceable at its inception—by reason of indefiniteness and lack of mutuality or by reason of its unilateral character or by reason that, because of such matters, it was subject to termination at any time thereafter by either of the parties—it was nevertheless valid and binding to the extent that it was performed. [Willard Sutherland & Co. v. United States, 262 U. S. 489, 43 S. Ct. 592; William C. Atwater & Co., Inc., v. United States, 262 U. S. 495, 43 S. Ct. 595; Martin v. Ray County Coal Co., *supra*; 13 C. J., art. 181, pp. 334 and 335; Nicholson v. Acme Cement Plaster Co., 145 Mo. App. 523, 122 S. W. 773; Underwood Typewriter Co. v. Century Realty Co., 118 Mo. App. 197, 94 S. W. 787.] It was good as long as it lasted. [McCoy v. St. Joseph Belt R. Co., 229 Mo. App. 506, 77 S. W. (2d) 175; Lyons v. St. Joseph Belt R. Co. (Mo. App.), 84 S. W. (2d) 933.] The plaintiff, upon being discharged thereunder, was entitled to be compensated for his reasonable expenditures and for the reasonable value of his services.

The plaintiff introduced evidence to show his preparation for and his beginning of operations under the contract, tending to show his compliance with the terms of such contract, his expenditures reasonably made, and the reasonable value of his services until the time of his discharge, which was shown to have been on December 5, 1935. He introduced evidence tending to show the number of axles sold up to that time, the kind of axles sold (whether Ford car or Ford truck), the amount of discount which he received as commissions on account of such sales, the gross proceeds realized by him from such sales, and evidence tending to show that the amount of his reasonable expenditures, together with the reasonable value of his services, exceeded the amount of commissions or compensation realized by him on account of such sales in the sum of $3000; and, in his petition, he sought judgment for such excess.

The point must be determined against the defendant.

3. The third point made by the defendant is as follows: "The court further erred in permitting the plaintiff, over the defendant's objection and exception, to amend his petition upon the trial of the cause; and, thereby change his cause of action sued upon from one for damages for an alleged breach of contract to an action in *quantum meruit* for the alleged reasonable of the services rendered by him in the performance of such contract, since, as a result of which, the plaintiff was permitted to recover upon another and entirely different cause of action from that upon which his petition was originally based."

The defendant contends that the cause of action upon which the plaintiff predicated his right to recover in the petition was originally filed was one for damages upon the alleged unlawful breach or termination of the contract in question by the defendant; that he was, by amendments permitted to be made, permitted to predicate his right of recovery upon a *quantum meruit* for his reasonable expenditures and the reasonable value of his services; and that he was permitted to recover for his expenditures and the reasonable value of his services.

Under a very similar state of pleadings in Glover v. Henderson, *supra,* and also in Ehrlich v. Aetna Life Insurance Company, 88 Mo. 249, it was held that the petition declared upon *quantum meruit.* In those cases, as here, the petition set out the contract of employment and the fact that services were rendered and expenditures incurred in the execution of the contract by the plaintiff and that the plaintiff was wrongfully discharged by the defendant; and it stated the reasonable value of the services rendered and the reasonable amount of expenditures and sought judgment for the value of such services and expenditures less the amount received.

In the Ehrlich case, it was held that, while the petition in that case was good as declaring upon a cause of action for damages for breach of the contract, it was also good as one declaring upon a cause of action upon *quantum meruit* and that, in the absence of a motion to elect, recovery could be had upon either theory.

We think in this case that the petition, however else it may be considered, may clearly be considered as one declaring upon *quantum meruit.* In this case, the plaintiff by his petition treats the contract as cancelled and seeks to recover merely for the reasonable sums expended by him (for which he obligated himself) in the performance of the contract, the wages of his employees, and his traveling, office, and other expenses, and to recover the reasonable value of his work and services in connection with the performance of such contract.

In Glover v. Henderson, *supra,* the court, in speaking of the petition in that case, said: "That the petition declares upon *quantum meruit* we think there can be no doubt. It is true the petition sets out the contract of employment, and shows that services were rendered and moneys expended in the execution of it; but it proceeds to aver that defendant wrongfully discharged the plaintiff and then states the value of the services rendered and moneys expended, and prays judgment therefor, less the amount received . . . It is clearly a declaration upon *quantum meruit.*" It cited the case of Ehrlich v. Aetna Life Insurance Company, *supra,* in support thereof.

In Ehrlich v. Aetna Life Insurance Company, *supra,* where an agent brought suit for damages for wrongful discharge, it was claimed that the action was one for damages for a breach of contract and was not one upon *quantum meruit.* The court, in disposing of

such contention, said, l. c. 257 and 258 of 88 Mo.: "It is no objection that the petition sets out the contract and a compliance with its terms and the termination of he contract by defendant, provided it shows that the plaintiff elects to treat it as cancelled and seeks to recover for the services rendered. The issues thus presented will be in the end the same as if the plaintiff had declared under a *quantum meruit* count."

In that case, the court further observed (l. c. 258): "The petition appears to count on both theories, and the remedy is by motion; if none is made, we think the alleged profits should be disregarded and the suit treated as one for services."

The plaintiff herein seeks to recover solely for his reasonable expenditures and for the reasonable value of his services. The fact that the petition as originally filed did not contain the word "reasonable" between the words "the" and "sum" in the seventh paragraph thereof or the words "and obligated himself to expend for" immediately after the word "expended" in such paragraph and the words "as shown by Exhibit 'D' attached hereto and made a part hereof" immediately following the word "expenses" in such paragraph, which were added by interlineation by way of amendment afterward, is immaterial. The petition as originally filed alleges that the plaintiff performed work and services of the reasonable value of $4000. There was no change whatever made by amendment to that allegation of the petition. The amendments that were made affected only the allegations as to the expenditures. All that the plaintiff could have recovered in any event for expenditures was a reasonable amount for such expenditures. The petition was amendable in the particulars noted, and no change in the plaintiff's original cause of action was effected by amending it as noted.

4. Even if the petition had originally stated a cause of action for damages instead of one upon *quantum meruit*, it would have been subject to a *quantum meruit* amendment without such amendment being regarded as introductive of a new cause of action or, if so regarded, it was one nevertheless not prejudicial to the defendant.

In 49 C. J., section 693, page 523, it is said: "An amendment adhering to the original transaction but seeking to recover upon an implied contract or *quantum meruit*, instead of upon an express contract, or seeking to recover upon an express contract instead of an implied contract or *quantum meruit*, is commonly permitted, and such an amendment is not regarded as introductive of a new cause of action, or if introductive of such a cause of action, as nevertheless not prejudicial to defendant."

In Gunther v. Aylor, 92 Mo. App. 161, l. c. 166, the court said: "As the plaintiffs alleged performance of their contract, the amendment from an implied contract to an express contract was not a

change of the cause of action, as they could sue upon either *quantum meruit* or on an express contract.''

In the instant case, the plaintiff alleged the performance of his contract and a willingness to continue such performance.

In Stone v. St. Louis Union Trust Co., 150 Mo. App. 331, 130 S. W. 825, l. c. 829, the court said: ''It is not doubted that one may amend the cause of action stated on an express contract by declaring on an implied one of the same general import.''

The amendment complained of made upon the trial consisted of the insertion of the word ''reasonable'' between the words ''the'' and ''sum'' in the seventh paragraph of the petition. As has already been noted, it affected only the allegation concerning the expenditures made by the plaintiff and did not affect the allegation concerning the value of the services rendered by the plaintiff. The record shows that, when the plaintiff offered to make such amendment on the trial, the defendant objected to such amendment being made because it would have the effect of changing the cause of action and would constitute a material variance in the pleadings so that the same character and quality of evidence would not support the cause of action as amended as would have supported the original cause of action pleaded. The defendant's objection was overruled by the trial court, and the amendment was allowed. The record, however, fails to show that, after such amendment was permitted, the defendant filed any motion to strike the same out or that it filed any other kind of a motion, but shows that it proceeded with the trial upon the petition as amended and made its defense to the action set up therein and joined in the submission of the cause by requesting certain instructions, a number of which the court gave. In doing so, the defendant must be held to have waived any right to complain of error upon the part of the court, if any, in permitting such amendment.

It is the established rule that an objection to the allowance of an amendment should be made when leave to amend is asked and that in order to avail himself of error in the granting of such amendment, the party objecting should stand on the ruling, since he waives the objection by going to trial thereon or by otherwise recognizing the amended pleadings. [31 Cyc., pp. 751 and 752; Lee v. W. E. Fuetterer Battery & Supplies Co., 323 Mo. 1204, 23 S. W. (2d) 45; Pilkington v. Pilkington, 230 Mo. App. 569, 93 S. W. (2d) 1068; Cain v. Cap Sheaf Bread Co. (Mo. App.), 57 S. W. (2d) 763.]

The point is ruled against the defendant.

5. For its fourth point, the defendant contends that instruction 1 given in behalf of the plaintiff was erroneous, for the reason that it assumed the existence of certain predicated facts without requiring the jury to find the existence of such facts and for the reason

that there was no testimony upon which such predicated facts so assumed might legally and properly have been based.

It especially criticizes that portion of the instruction which is as follows: ". . . and if you further find and believe that on or about October 8, 1935, the defendant violated the terms of contract by circularizing and selling directly to the dealers in plaintiff's territory, without the consent of the plaintiff, whereby the sales-price for demonstrating units was materially less than had previously been quoted to said dealers by plaintiff, thus intending to deprive, and, in fact, depriving plaintiff of all profits on said demonstrating units, to which he was entitled under the terms of his contract if so," etc. It contends that such portion of such instruction erroneously assumed that (1) the defendant violated the terms of the contract in a certain way and (2) the defendant violated the terms of the contract without the plaintiff's consent and (3) the defendant gave the dealers a sales price less than the sales price that had been previously quoted by the plaintiff and (4) the defendant intended to deprive and in fact did deprive the plaintiff of all profits on said demonstrating units to which he was entitled. It complains that the jury was not required to find the existence of such facts.

The instruction is not subject to the criticism made that it did not require the jury to find the facts. The words "and if you further find and believe that," etc., at the beginning of the portion of the instruction especially complained of, and the words "if so," at the conclusion thereof, are sufficient to relieve it of such criticism.

The further criticism that there was no testimony upon which to base such predicated facts is likewise without merit. The plaintiff's Exhibit 24, together with the testimony of N. S. Lincoln, the defendant's director of sales, is sufficient to show that the defendant did circularize the plaintiff's territory without the plaintiff's consent, offering reduced prices from those at which the plaintiff was authorized to sell; that all of the dealers in the plaintiff's territory were so circularized; and that, after they were so circularized and the axles were sold by the defendant direct to the dealers, there was no profit in it for the plaintiff. This was a clear violation of the plaintiff's contract, or at least it was evidence from which the jury might so find.

The defendant in its criticism singles out in such connection the following paragraph from the instructions: ". . . then and in that event you will find the issues for the plaintiff and will award him such sum or sums of money as you may find and believe was the reasonable value of the services rendered by plaintiff, if any, and the reasonable amount of money necessarily expended by him, if any; between said dates, less such sum, as you may find and believe the plaintiff received as compensation from the sale of axles between said dates . . .," for the reasons (1) that there was no evi-

dence of the reasonable value of the services rendered or alleged to have been rendered; (2) that there was no evidence of the reasonable amount of money necessarily expended by the plaintiff; and (3) that the reasonable value of the services rendered by the plaintiff and the reasonable amount necessarily expended by him and the amount which he had already received as compensation were limited to the amounts as shown by the evidence.

However, it appears that there is testimony in the record with reference to the reasonable amount of the plaintiff's expenditures under the contract and with reference to the reasonable value of the services rendered by him under the contract. No objection appears to have been made that the witnesses who gave such testimony were not qualified to testify. The objections went to the point only that the testimony offered was incompetent, irrelevant, and immaterial.

In Glover v. Henderson, *supra,* it is said, 25 S. W. 178: "As the plaintiff can maintain this action to recover the value of his services and the reasonable expenditures incurred by him, it follows that he had the right to produce evidence showing the value of such services. Evidence of what is usually charged for similar services at the same place was admissible. And it was also competent to show, by persons who were acquainted with the value of like services, what, in their opinion, the services of the plaintiff were worth."

In the instant case, the testimony offered by the plaintiff came within the requirements above announced in Glover v. Henderson.

While that portion of the instruction first set out and criticized—submitting to the jury that, if it found and believed that on or about October 8, 1935, the defendant violated the terms of the contract by circularizing and selling direct to the dealers in the plaintiff's territory without the consent of the plaintiff at a sales price for demonstarting units which was materially less than had been previously quoted to the dealers by said plaintiff, thus intending to deprive and in fact depriving the plaintiff of all benefits on said demonstrating units, to which he was entitled under the terms of his contract, if so, etc.—may have been erroneous, yet, as it does not appear that the plaintiff sought to recover or did recover for profits, it was not reversibly so. The point is without merit and is ruled against the defendant.

6. The fifth and last point made by the defendant is as follows: "The court erred in not setting aside the finding and verdict of the jury and in not sustaining the defendant's motion for a new trial of this cause, for the reason that the damages awarded by the jury were not predicated upon, or supported by, any legal, competent, relevant or material testimony; but, on the contrary were not only shown by the evidence to be uncertain, remote, speculative and conjectural, but were also shown, by the evidence, to be grossly excessive."

It argues that damages may not be predicated upon evidence which is uncertain, remote, speculative, and conjectural; that the testimony upon which the same may be legally predicated should embody such facts and data from which the triers of fact may be afforded a rational basis or standard for a reasonably correct estimate of the nature and character of the alleged legal injury and the amount of damages which legally resulted therefrom; that this is especially true where damages are claimed for the loss of profits which one alleges he might have derived from the performance of the contract; and that such damages are necessarily speculative, remote, and uncertain and may not form the basis of a lawful judgment, unless established by competent evidence, for the reason that actual damages only may be awarded and the proof thereof must afford the jury some standard by which the same may be actually determined. It cites numerous authorities under such head.

However, this is not a suit for damages based upon the loss of profits, as has repeatedly been demonstrated herein. Neither is it a suit for damages for breach of contract. It is a suit upon *quantum meruit* for the reasonable value of expenditures made and of services performed, both of which are fully shown by competent evidence in the record. The evidence touching such matters is not speculative, uncertain, or problematical, but is definite and certain. The authorities cited by the defendant are therefore not applicable. If it had been a suit for damages based upon the loss of profits, the defendant's point would doubtless have been good; and such authorities would have been applicable; but, not being such, they are inapplicable.

There is substantial evidence in the record tending to show that, at the time the contract in question was made, it was known to both parties that a considerable amount of preliminary work involving both service and expenditures was necessary to be done before a large volume of business could be realized; that the plaintiff had afterwards, at considerable expense, entered upon such preliminary work, developing the territory allotted to him, getting into touch with dealers therein, displaying the equipment which was handled and which was to be sold, and demonstrating the merits thereof; that he had equipped himself with suitable models and had exhibited the same to various dealers in his territory; that he had established an office as headquarters from which said business might be conducted throughout his territory and employed assistant help and an assistant salesman and had purchased equipment and cars to be used in developing the work so as to make it pofitable; and that the business being thus established by him had every promise of being valuable and productive, not only of compensation to him but of profit to the defendant. After the plaintiff had thus incurred expense and after he had laid a foundation for said business and the successful operation thereof, his contract was, without notice, terminated by

the defendant; and the results of his expenditures and services were taken over by the defendant and appropriated by it to its own profit.

The record does not show any claim on the part of the defendant that the plaintiff was not suited and qualified for the work which he had contracted to perform or that he was lacking in efficiency or that there was any charge of incompetency, neglect, or other matter of criticism against him.

The defendant, having displaced him and having taken over the work which he had done, afterward placed another in charge as its representative and appropriated the benefits from the plaintiff's expenditures and labor and, upon such basis, continued in the operation and development of such business in the territory in which the plaintiff had operated and which had been allotted to him. Having done so, under the law as cited, it is liable to the plaintiff for just compensation.

From the facts in the record, it is clear that the verdict of the jury for the plaintiff and the judgment of the court rendered thereon are fully justified.

The judgment should be affirmed, and it is accordingly so ordered. All concur.